```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
```

  THOMAS P. FINN,

              Plaintiff,                Civil No. 15-2409
  v.                                      (NLH/KMW)

  THE EXECUTOR/EXECUTRIX/               **OPINION**
  ADMINISTRATOR OF THE ESTATE
  OF GENNARO ("JERRY") R.
  SCHIAVO, JR. and SHARON
  SCHIAVO,

              Defendants.

**APPEARANCES:**

Joseph D. Cronin
Cronin Law Firm LLC
1500 John F. Kennedy Boulevard
Suite 1020
Philadelphia, PA 19102

    *Counsel for Plaintiff*

Jonathan A. Cass
Cohen, Seglias, Pallas, Greenhall & Furman
United Plaza, 19th Floor
30 S. 17th Street
Philadelphia, PA 19103

    *Counsel for Defendants*

**HILLMAN, District Judge:**

    This matter comes before the Court by way of motion [Doc.

No. 9] of Defendants, the Executor/Executrix/Administrator of

the Estate of Gennaro ("Jerry") Schiavo, Jr. and Sharon Schiavo,

seeking to dismiss Plaintiff Thomas P. Finn's Second Amended

Complaint and compel arbitration based upon an agreement executed in 2003 by Jerry Schiavo and Plaintiff.  Defendants further seek to dismiss, with prejudice, all claims against Sharon Schiavo for failure to assert cognizable causes of action.

The Court has considered the submissions of the parties and decides this matter pursuant to Fed. R. Civ. P. 78.  For the reasons expressed below, Defendants' motion to dismiss and compel arbitration will be granted as to the Estate. Plaintiff's claims against Sharon Schiavo will be stayed pending the outcome of arbitration because the claims against her are intertwined with Plaintiff's arbitrable claims against the Estate.

I. **JURISDICTION**

The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332, based on diversity of citizenship.  Plaintiff is a citizen of the Commonwealth of Pennsylvania, and Defendants are citizens of the State of New Jersey.  The amount in controversy exceeds $75,000.

II. **BACKGROUND**

In December 2002, Jerry Schiavo and Plaintiff formed Temp-Rite, LLC, a Pennsylvania limited liability company that provided mechanical contracting, air conditioning, refrigeration and heating sales, repairs, maintenance and services to

customers throughout Pennsylvania and Southern New Jersey. Jerry Schiavo and Plaintiff were the only two members of Temp-Rite, and had equal 50% ownership interests. Plaintiff primarily focused on providing services and installation. Jerry Schiavo was responsible for all financial decisions and distributions, focusing on the business aspect of Temp-Rite. Jerry Schiavo's wife, Sharon Schiavo, worked for Temp-Rite as the company's Operations Manager and bookkeeper.

On January 15, 2003, Jerry Schiavo and Plaintiff executed the "Operating Agreement of Temp-Rite, LLC" ("Agreement") [Doc. No. 9-1], which governed the operations of Temp-Rite.[1] Pursuant to the Agreement, the business and internal affairs of Temp-Rite were to be governed by the laws of the Commonwealth of Pennsylvania. (Agreement ¶¶ 1.10, 15.3.) The Agreement also included an arbitration provision. (Id. ¶ 14.1.)

Plaintiff alleges that in August 2014, Plaintiff discovered

---

[1] While it appears Plaintiff intended to attach the Agreement to his Second Amended Complaint it is not present in his filings [Doc. No. 8]. A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). The parties do not dispute the Agreement's authenticity and Plaintiff's claims are based on the Agreement; the Court will therefore consider the Agreement at issue.

3

that Jerry Schiavo had been stealing from Temp-Rite and Plaintiff for years by expending Temp-Rite funds for Defendants' personal benefit.  Plaintiff further alleges that Sharon Schiavo conspired with and aided and abetted Jerry Schiavo in these acts by misappropriating Temp-Rite's funds for personal use, misrepresenting to Plaintiff the financial health of Temp-Rite, and denying Plaintiff access to the company's financial information.  On February 7, 2015, Jerry Schiavo died due to illness.

On April 6, 2015, Plaintiff filed the present suit.  On July 17, 2015, Plaintiff filed his Second Amended Complaint, alleging: (1) breach of contract against the Estate; (2) civil conspiracy to commit breach of contract against Sharon Schiavo; (3) fraud against all Defendants; (4) breach of fiduciary duty against the Estate; (5) aiding and abetting breach of fiduciary duty against Sharon Schiavo; (6) conversion against all Defendants; (7) unjust enrichment against all Defendants; and (8) demand for accounting against the Estate.

### III. STANDARDS OF REVIEW

**A. Motion to Compel Arbitration**

The Third Circuit recently clarified what standard of law applies when evaluating motions to compel arbitration. In Guidotti v. Legal Helpers Debt Resolution, 716 F.3d 764, 771 (3d Cir. 2013), the Third Circuit held that, "'[w]here the

4

affirmative defense of arbitrability of claims is apparent on the face or a complaint (or ... documents relied upon in the complaint),' 'the [Federal Arbitration Act] would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery[.]'" Id. at 773-74 (internal citations omitted).  However, when arbitrability is not apparent on the face of the complaint, then further development of the factual record is necessary and the motion should be decided under the summary judgment standard. Id. at 774.  Moreover, if the complaint and incorporated documents facially establish arbitrability but the non-moving party comes forward with enough evidence to question the parties' intentions concerning arbitration, the motion to compel arbitration should be decided under the summary judgment standard.  Id.

      Here, the affirmative defense of arbitrability is apparent on the face of the complaint which repeatedly refers to the Agreement.  Accordingly, the motion to compel arbitration must be decided on a motion to dismiss, or Rule 12(b)(6) standard.

      When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in light most favorable to the plaintiff.  Evancho v. Fisher, 423 F .3d 347,

5

350 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plaint statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S.Ct. 1937, 1935 (2009) ("Our decision in Twombly expounded on the pleading standard for 'all civil actions[.]'" (citation omitted)). First, under the Twombly/Iqbal standard, a "district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) (citing Iqbal, 129 S.Ct. at 1950). Second, a district court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoting Iqbal, 129 S.Ct. at 1950). "[A] complaint must do more than allege the plaintiff's entitlement to relief." Id. The defendant bears the burden of showing that no claim has been presented. Hedges v. U.S., 404 F .3d 744, 750 (3d Cir. 2005).

6

### B. Choice of Law

In diversity cases, federal courts apply the forum state's choice of law rules to determine which state's substantive laws are controlling. Maniscalco v. Brother Int'l (USA) Corp., 709 F.3d 202, 206 (3d Cir. 2013) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). In this case, the choice of law rules of New Jersey apply. Under New Jersey law, a choice of law provision will be honored unless: (1) the state chosen has no substantial relationship to the parties or the transaction; or (2) application of the law chosen would conflict with a fundamental public policy of a state having a greater interest in a determination of a particular issue and such state would be applicable in the absence of the choice of law provision under the governmental-interest analysis. Prudential Ins. Co. of Am. v. Nelson, 11 F. Supp. 2d 572, 578 (D.N.J. 1998).

### IV. ANALYSIS

#### A. Choice of Law

As a preliminary matter, the Court will first analyze what state law to apply in this case. The parties' Operating Agreement contains a choice of law provision at Article 15.3 which states:

> This Agreement shall be governed exclusively by the

7

>    laws of the Commonwealth of Pennsylvania and shall be
>    construed in accordance with the laws of the
>    Commonwealth of Pennsylvania.

(Agreement ¶ 15.3.)  Accordingly, the Court must determine whether the parties have a substantial relationship with Pennsylvania and whether the application of Pennsylvania law will conflict with a fundamental public policy of a state having a greater interest in the litigation.

The Court is satisfied that the laws of Pennsylvania, as selected in the parties' forum selection clause, should be applied to Plaintiff's claims.  The parties have a substantial relationship with Pennsylvania because Temp-Rite is a Pennsylvania limited liability company, Plaintiff is a citizen of the Commonwealth of Pennsylvania, and Temp-Rite provided services to residential customers throughout Pennsylvania.  (Second Am. Compl. ¶¶ 1, 9).  Additionally, it does not appear that any state has a greater interest in the litigation.  Accordingly, the Court will apply Pennsylvania law.

   B.   **Arbitration**

It is generally recognized that arbitration is "a matter of contract between the parties."  <u>First Options of Chicago, Inc. v. Kaplan</u> ("<u>First Options</u>"), 514 U.S. 938, 943 (1995).  Consequently, while it is true that the Federal Arbitration Act (FAA) establishes a policy favoring the liberal construction of arbitration agreements and the resolution of any doubts in favor

8

of arbitration, the court must also find that the parties have actually agreed to submit to arbitration for any particular issue.  See Granite Rock Co. v. International Broth. of Teamsters, 561 U.S. 287, 299 (2010).  "Although the FAA applies to both state and federal judicial proceedings, state contract-law principles generally govern a determination whether a valid agreement to arbitrate exists."  Hojnowski v. Vans Skate Park, 187 N.J. 323, 342, 901 A.2d 381 (2006).

Whether the parties have agreed to arbitrate their disputes is reserved for judicial determination unless the parties have clearly indicated otherwise.  Puleo v. Chase Bank USA, N.A., 605 F.3d 172, 178 (3d Cir. 2009).  In making this determination, a court must "inquire into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement."  Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005).  As a general policy, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the dispute."  Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646, 584 F.3d 513, 555 (3d Cir. 2009) (citing AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986)).

### 1. Whether a Valid Agreement to Arbitrate Exists

The Court first considers whether a valid agreement to arbitrate exists. Plaintiff argues there is no valid agreement to arbitrate because (1) Jerry Schiavo is deceased, and (2) if he had not died, he would have been expelled for material breach.

First, the fact that Jerry Schiavo is deceased does not affect the Agreement's validity. The estate of a deceased party to an arbitration agreement is bound by the agreement entered into. Peltz ex rel. Estate of Peltz v. Sears, Roebuck & Co., 367 F. Supp. 2d 711, 718 (E.D. Pa. 2005). Stated differently, the estate stands in the shoes of Jerry Schiavo to compel arbitration. Id. (citing Harvey v. Hassinger, 461 A.2d 814, 816 (Pa. 1983)). Further, the Agreement provides that, "[the] Agreement shall bind the parties thereto as well as their successors, assigns, heirs, and estates." (Agreement ¶ 15.12.)

Second, at that time of his death Jerry Schiavo was not disassociated from the company, and even if he was, a valid agreement still exists in this case. The disassociation provision of the parties' Agreement provides:

> Definition of member disassociation. The disassociation of a member means the termination of the member's right to participate in the LLC's business and internal affairs by voting on LLC matters, by acting as an agent for the LLC or otherwise.

(Agreement ¶ 6.1.)  Events of disassociation include when a member dies or is expelled from the company.  (Agreement ¶ 6.2(a), (f).)

"While an agreement to arbitrate does not usually continue in effect after the underlying contract expires, a provision relating to dispute resolution may, in some instances, survive the expiration of the contract."  Townsend v. Pinnacle Entm't, Inc., 457 F. App'x 205, 209 (3d Cir. 2012) (citing Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 208, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991); Luden's Inc. v. Local Union No. 6 of Bakery, Confectionery & Tobacco Workers Int'l Union, 28 F.3d 347, 363–64 (3d Cir. 1994)).  In Townsend, the Third Circuit found that where an arbitration clause provides that the agreement to arbitrate survives the expiration of the agreement, that agreement should be enforced under the FAA.  457 Fed. Appx. at 209; see also Sniger v. CVTech Grp., Inc., No. 11-6130, 2012 WL 4490782, at *5 (D.N.J. Sept. 26, 2012) (same).  Likewise here, the parties' Agreement explicitly provides that: "Rights, duties and liabilities accrued by the parties under this Agreement before its termination shall continue in full force and effect after its termination."  (Agreement ¶ 13.2.)  Therefore, even if Jerry Schiavo was disassociated from the company at the time of his death, which he was not, he would still be bound by the Agreement.

### 2. Whether the Particular Dispute Falls within the Scope of that Agreement

The Court next turns to whether Plaintiff's claims fall within the scope of the parties' Agreement.  The Court finds that they do.  The parties' Agreement included an arbitration provision which provides: "Any dispute between or among the parties relating to Arbitrable Matters . . . shall be exclusively and finally resolved by arbitration by a single arbitrator."  (Agreement ¶ 14.1.)  The Agreement defines "Arbitrable Matters" as: (1) "how to construe and enforce the provisions [regarding arbitration of LLC disputes]"; (2) "whether the purchase price or the other terms of purchase of a member's LLC interest pursuant to the terms of this Agreement is fair to the LLC and to the members"; (3) "any claim by a member in the member's capacity as a member against any other member in that other member's capacity as a member"; and (4) "any other matter that, in the Arbitrator's view, is appropriate for decision."  (Id. ¶ 14.2.)

The Agreement explicitly defines issues concerning the scope of the arbitration provision and claims by a LLC member against another member in their respective capacities as "Arbitrable Matters."  (Agreement ¶ 14.2.)  These provisions are not ambiguous.  They evidence the intent of the parties to arbitrate all disputes defined as "Arbitrable Matters" arising

out of the business relationship between Plaintiff and Jerry Schiavo.  Further, all of Plaintiff's claims arise from the relationships and obligations set forth in the Agreement.  Accordingly, the Court finds that a valid agreement to arbitrate exists and Plaintiff's claims against Jerry Schiavo fall within the scope of that agreement.  As a result, this Court is required to compel arbitration.

Plaintiff's claims, including fraud, conversion, and unjust enrichment, asserted against Sharon Schiavo inextricably overlap with the claims asserted against the Estate.  Because Plaintiff's claims against Sharon Schiavo are so intertwined with Plaintiff's claims against the Estate, the Court will stay Plaintiff's claims against Sharon Schiavo, who was not a signatory to the Agreement, pending the outcome of arbitration.

**V.   CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss the complaint pursuant to the parties' contractual arbitration requirement and compel arbitration will be granted as to the Estate.  Defendants' motion to dismiss Plaintiff's claims against Sharon Schiavo is denied without prejudice.  Plaintiff's remaining claims against Sharon Schiavo will be stayed, pending

the outcome of arbitration.  An Order consistent with this Opinion will be entered.

                                                                           s/ Noel L. Hillman  
                                                         NOEL L. HILLMAN, U.S.D.J.

Dated: February 11, 2016

At Camden, New Jersey